# United States District Court
# District of Massachusetts

FARIBA D. AMARY,
    Plaintiff,

v.                                                   CIVIL ACTION NO. 12-10777-NMG

JPMORGAN CHASE & CO.,
    Defendant.

*REPORT AND RECOMMENDATION*
*ON DEFENDANT'S MOTION TO:*
*(1) TRANSFER PURSUANT TO*
*28 U.S.C. § 1404(a); (2) DISMISS*
*PURSUANT TO F.R.C.P. 12(b)(1)*
*AND 12 (h)(3) AND 28 U.S.C. § 1332(a);*
*OR IN THE ALTERNATIVE;*
*<u>(3) COMPEL ARBITRATION (#6)</u>*

COLLINGS, U.S.M.J.

*I. Introduction*

On April 30, 2012, plaintiff Fariba D. Amary ("Amary") filed a seven count complaint against defendant JPMorgan Chase & Co. ("JPMorgan"),

specifically alleging claims for breach of fiduciary duty (Count I), negligence (Count II), breach of contract (Count III), breach of implied contract (Count IV), breach of the covenant of good faith and fair dealing (Count V), breach of the covenant of good faith and fair dealing (Count VI), and conversion (Count VII). Amary seeks damages in excess of $235,000 based on the contention that JPMorgan lost the contents of a safety deposit box she had leased at Washington Mutual Bank in Texas. The Court is alleged to have subject matter jurisdiction over the case based on diversity of the parties and the amount in controversy exceeding the jurisdictional limits.

In lieu of answering the complaint, JPMorgan filed a motion to transfer pursuant to 28 U.S.C. §1404(a) to the United States District Court for the Southern District of Texas, Houston Division, a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) and 28 U.S.C. §1332(a), or, in the alternative, a motion to compel arbitration. (#6[1]) The defendant filed a memorandum of law in support of its motion together with exhibits. (#7) In turn, the plaintiff filed an opposition with exhibits to JPMorgan's motion. (#9) With leave having been granted (#15), JPMorgan

---

[1] This motion has been referred to the undersigned for the issuance of a Report and Recommendation as to disposition. *See* Electronic Order entered 06/01/2012.

filed a reply brief (#16) on August 9, 2012 and, eight days later, Amary submitted a response (#17) to the reply. With the record complete, the defendant's motion is in a posture for decision.

## *II. Background*

According to the allegations of the complaint, on June 2, 2008, Amary went to the Washington Mutual Bank in Houston, Texas, and opened a safety deposit box. (#1 ¶ 3) Amary's daughter, Megan Khorsandian ("Khorsandian"), accompanied her mother to the bank and was listed as a co-signer on the Safebox lease. (#1 ¶ 4) The plaintiff was given two keys to the safety deposit box that day. (#1 ¶ 5) On June 5, 2008, Amary was charged a Safebox fee on her bank statement. (#1 ¶ 7) The plaintiff was again charged a Safebox fee on her bank statement on January 9, 2009. (#1 ¶ 8)

On September 25, 2008, JPMorgan acquired the banking operations of Washington Mutual. (#1 ¶ 13) Amary alleges that, according to JPMorgan, the bank has in its possession a Safebox lease dated October 6, 2008, for box number 227 or 22700 that has Amary's and her daughter's signatures on it. (#1 ¶¶ 9, 14) The plaintiff denies that the date written next to her signature on the October 6, 2008 Safebox lease is in her handwriting. (#1 ¶ 10) Amary denies opening a safety deposit box on October 6, 2008 as her deployment training

began that date at a location distant from the bank location where the lease was purportedly signed. (#1 ¶ 11) The plaintiff denies surrendering a safety deposit box on October 6, 2008 as reflected in the bank's Online Safe Box History System. (#1 ¶ 12) The plaintiff denies surrendering a safety deposit box on March 19, 2008 as reflected in the bank's Online Safe Box History System. (#1 ¶ 13)

### III. Discussion

### A. Motion To Transfer

JPMorgan seeks to have this action transferred to the United States District Court for the Southern District of Texas, Houston Division.[2] Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As explained by the First Circuit:

> 'Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."' *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v.*

---

[2] Venue would be proper in the Southern District of Texas given that the events at issue took place in Houston and JPMorgan, with a place of business in Houston, would be subject to service of process in Texas.

4

> *Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L.Ed.2d 945 (1964))....We review a 'district court's decision on transfer of venue for an abuse of discretion.' *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir.2000); *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987). Not only does the burden of proof rest with the party seeking to transfer; there is a 'strong presumption in favor of the plaintiff's choice of forum.' *Coady*, 223 F.3d at 11.

*Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 12-13 (1 Cir., 2009).

When deciding a motion to transfer, a leading treatise has recognized that:

> Courts frequently divide factors they consider into private and public categories....Private factors include the statutory considerations of convenience of the parties and witnesses, but also include the plaintiff's forum preference, where the claim arose, and the relative ease of access to sources of proof. Public factors, which encompass the statutory consideration of the interest of justice, focus on judicial economy and often include the district court's familiarity with governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts.

15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 3847 (2007).

The defendant's memorandum of law touches upon a number of these private and public factors. JPMorgan notes that all of the relevant events took place in Houston, and that is where the plaintiff's claims arose. As a consequence, "all of the discovery will be focused on activities that occurred in

Texas with individuals located in Texas." (#7 at 9) Most particularly, because there is a question of into which safety deposit box Amary placed her belongings, inspections will be required of the safety deposit box area at the bank and inquiries made of branch employees involved in the transaction(s). The defendant claims that it would be an undue hardship if it had to make its employees available in Massachusetts for deposition or for trial.

While it certainly is true that discovery will focus on events that transpired in Texas, this seems likely to be a case that is founded more heavily on documentary evidence than the testimony of innumerable witnesses. In any event, the witnesses' convenience is "an extremely important, if not the most important, factor to be analyzed in determining whether to change a litigation's venue." *Gemini Investors Inc. v. Ameripark, Inc.,* 542 F. Supp.2d 119, 126 (D. Mass., 2008) (citing *Brant Point Corp. v. Poetzsch,* 671 F. Supp. 2, 3 (D. Mass., 1987)). When assessing the convenience of the witnesses, the Court "must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Gemini Investors,* 542 F. Supp.2d at 126 (quoting *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass., 1991)(internal quotation marks omitted)). In order to achieve a meaningful

analysis, the "party seeking transfer . . . must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." *Gemini Investors,* 542 F. Supp.2d at 126 (quoting *Princess House,* 136 F.R.D. at 18 (internal quotation marks omitted)).

JPMorgan does not identify any specific witnesses who will be inconvenienced and, in fact, to date "has not yet identified and located all of those Washington Mutual Bank employees who worked at the branch" at the time of the relevant events. (#7 at footnote 5) In its reply, the defendant states that it "has identified a number of individuals who live in or near Houston, Texas who have knowledge of the facts and transactions at issue and who likely will be deposed and called as trial witnesses." (#16 at 2)  Again, however, JPMorgan does not reveal who these individuals are, how many such individuals there are, whether they are current employees of JPMorgan or former employees of Washington Mutual Bank, whether they are "key" witnesses, and what the substance of their testimony will be.  The contention that individuals who no longer work for the defendant could not be compelled to testify in Massachusetts is afforded little weight since JPMorgan admittedly does not know who these individuals are, where they are located, or even if they possess relevant information.  In short, the defendant's argument with

respect to witnesses is one of generalities rather than specifics at this point.

Plainly one party to this suit will be inconvenienced in whichever forum the litigation proceeds. It is important to bear in mind that Massachusetts was the plaintiff's preference in forum and that she is proceeding *pro se*. Amary and her daughter live in the New England area, so this is clearly a more convenient forum for them. Obviously, both women will be key witnesses in the plaintiff's case and both will be testifying based on personal knowledge about the events that transpired in Houston.

Considering all of the parties' arguments and the record now before the Court, the convenience of the witnesses does not weigh in the defendant's favor in seeking a transfer.

Since the parties have already undertaken one inspection of the safety deposit box area of the bank during which the plaintiff tried her keys in various boxes, it would appear that a single additional inspection that could be videotaped would suffice. Such a videotape or, alternatively, photographs, could be shown to the jury should either of the parties so desire. Moreover, it would certainly be possible to schedule depositions of pertinent witnesses in Houston to coincide with the inspection in order to reduce costs.

JPMorgan asserts that Texas law will govern Amary's claims in this case,

and that the federal court in the Southern District of Texas would be more familiar with that state law. The defendant's contention is founded upon the choice of law provision in the October 2008 Safebox lease. It is disputed whether that lease is valid or applicable, so the incorporated choice of law provision cannot be considered in deciding whether a transfer is appropriate.

Having considered all of the relevant factors, the Court is of the view that JPMorgan has failed to overcome the "strong presumption in favor of the plaintiff's choice of forum," *Astro-Med*, 591 F.3d at 13 (internal quotation marks and citation omitted), and has not met its burden to show that for "the convenience of parties and witnesses, in the interest of justice," the Court, in its discretion, should transfer this case to Texas.

### B. Motion To Dismiss

JPMorgan has moved to dismiss the complaint based on the damages limitation clause in the October 6, 2008 Safebox lease. Specifically, that lease agreement provides: "Important Notice: (1) Any claims of loss or damage may not exceed $10,000.00." (#7-1, Exh. A at 1) Further, the Safebox Regulations appended to the lease state, in relevant part:

> Important Notice: (1) Any claims of loss or damage
> may not exceed $10,000 as more thoroughly described

> below.
>
> \*\*\*\*\*
>
> 3. ...RENTER AGREES AND REPRESENTS THAT THE REPLACEMENT OR LOSS VALUE OF THE CONTENTS OF THE BOX SHALL AT NO TIME DURING THE LEASE EXCEED $10,000.00 AND, BASED ON THIS REPRESENTATION, FURTHER ACKNOWLEDGES AND AGREES THAT THE BANK'S LIABILITY WITH RESPECT TO ANY CLAIM ARISING OUT OF THE LEASE WILL BE LIMITED TO $10,000.00.

#7-1, Exh. A, Safebox Regulations ¶ 3.

JPMorgan argues that, in light of these lease provisions, it is a legal certainty that Amary's maximum possible recovery will be less than the $75,000.00 jurisdictional amount required to support diversity jurisdiction. Consequently, in the defendant's view, this Court lacks subject matter jurisdiction and the complaint must be dismissed.

The difficulty with the defendant's position is that Amary's claims are premised on the June 2, 2008 transaction when she rented a safety deposit box at the Washington Mutual Bank in Houston, not on an October 6, 2008 Safebox lease. (#1 ¶ 3)  The plaintiff denies ever having closed the safety deposit box she rented in June, 2008 and, in fact, claims to have both keys to that box in her possession. (#1 ¶¶ 12 -15)  Amary denies opening a safety deposit box on October 6, 2008. (#1 ¶ 11)

The bottom line is that the defendant's arguments, i.e., that Amary surrendered the June 2008 safety deposit box and entered into a new Safebox lease on October 6, 2008 and that the terms of that lease are now controlling, are basically in the nature of affirmative defenses. At this juncture, it has not been established that the damages limitation clause in the October 6, 2008 Safebox lease is applicable so, consequently, the Rule 12(b)(1) motion must fail.

### C. Motion To Compel Arbitration

JPMorgan has moved for an Order compelling arbitration, claiming that the October 6, 2008 Safebox lease incorporates an arbitration clause. Indeed, in relevant part that lease provides:

> Bank and Renter elect to be bound by the Federal Arbitration Act. Except as set forth below, the parties must arbitrate any dispute or controversy concerning Renter's box relationships with Bank, WHEN EITHER party requests that the matter be submitted to arbitration. Under the procedure, the dispute is submitted to a neutral party for determination. RENTER AND BANK ARE WAIVING THE RIGHT TO HAVE DISPUTES HEARD BEFORE A JUDGE OR JURY.

#7-1, Exh. A, Safebox Regulations ¶22.

Amary maintains, however, that because she has not entered into the October 6, 2008 lease, she is not bound by its arbitration clause, and thus the Court should not compel arbitration.

11

While the plaintiff's claims arise out of the June 2, 2008 transaction during which Amary rented a safety deposit box (#1 ¶¶ 3-18), the Court has not been provided with a copy of any June 2008 Safebox lease. Rather, again, JPMorgan relies on the October 6, 2008 lease in its attempt to compel arbitration. (#7 ¶¶ 14, 15)

"It is axiomatic that arbitration is a creature of contract." *Unite Here Local 217 v. Sage Hospitality Resources*, 642 F.3d 255, 259 (1 Cir., 2011); *Rent-A-Center, West, Inc. v. Jackson*, - U.S. -, 130 S. Ct. 2772, 2776 (2010)("The FAA reflects the fundamental principle that arbitration is a matter of contract."). As explained by the Supreme Court, "[i]t is well settled...that whether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination. It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. International Broth. of Teamsters*, - U.S. -, 130 S.Ct. 2847, 2855-2856 (2010)(internal quotation marks and citations omitted). "A party seeking to compel arbitration under the FAA must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the

claim asserted comes within the clause's scope.'" *Dialysis Access Center, LLC v. RMS Lifeline, Inc.,* 638 F.3d 367, 375 (1 Cir., 2011)(internal quotation marks and citation omitted); *see Granite Rock*, 130 S.Ct. at 2856 ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.* To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." (citations omitted; emphasis in original)); *Gove v. Career Systems Development Corp.*, 689 F.3d 1, 4 (1 Cir., 2012). Lastly, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock*, 130 S.Ct. at 2857-2858 (emphasis in original).

Amary alleges that she never closed the safety deposit box opened on June 2, 2008 and that it was from this box that the bank misplaced her belongings. (#1 ¶¶ 3-18)  JPMorgan has not shown that the October 6, 2008 Safebox lease upon which it relies in seeking arbitration is applicable or

controlling. Because there is a question as to whether any valid agreement with respect to arbitration exists, and, if it does, whether it governs disputes arising out of the June 2, 2008 transaction, the defendant's motion to compel arbitration should be denied.

### IV. Recommendation

For all the reasons stated, I RECOMMEND that Defendant's Motion To: (1) Transfer Pursuant To 28 U.S.C. § 1404(a); (2) Dismiss Pursuant To F.R.C.P. 12(b)(1) And 12(h)(3) And 28 U.S.C. § 1332(a); Or In The Alternative; (3) Compel Arbitration (#6) be DENIED.

### V. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v.*

*Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); see also *Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

October 18, 2012.